Filed 2/27/15  Macpherson Oil Co. v. Smoot CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| MACPHERSON OIL COMPANY,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>JUDITH SMOOT et al.,<br><br>Defendants and Appellants. | F067496<br><br>(Super. Ct. No. CV-278292)<br><br>**OPINION** |

-ooOoo-

APPEAL from an order of the Superior Court of Kern County.  Sidney P. Chapin, Judge.

Law Offices of Jack A. Draper and Jack A. Draper II for Defendants and Appellants.

Bright and Brown, James S. Bright, Maureen J. Bright, Brian L. Becker; Clifford & Brown and Grover H. Waldon for Plaintiff and Respondent.

-ooOoo-

Appellants, Judith Smoot, as trustee of the Luise Smoot Family Trust (Trust), Judith Smoot individually, and Brett Cooper, challenge the trial court's denial of their motion to strike certain causes of action alleged against them by respondent Macpherson Oil Company (Macpherson) as a strategic lawsuit against public participation (SLAPP) under Code of Civil Procedure[1] section 425.16.

Macpherson purchased two oil and gas leases from Arthur McAdams. McAdams had settled litigation with Judith Smoot's deceased father, Jim C. Smoot, regarding these leases some years earlier. McAdams was the lessee and the Smoot family was the lessor. As part of that settlement, Jim C. Smoot was given a right of first refusal that required McAdams to send written notice of any proposed sale. McAdams sent appellants written notice of the proposed Macpherson sale.

Macpherson filed the underlying complaint in response to a letter sent by Smoot to McAdams. In this letter, Smoot questioned the validity of the written notice of the sale and denied any liability for contamination by the acidic oil sludge that was known to be on the Trust property.

The trial court correctly concluded that the letter sent by Smoot was not entitled to protection under section 425.16. Accordingly, the order denying the motion to strike will be affirmed.

## BACKGROUND

Jim C. Smoot and Luise Smoot owned two parcels of property, including the mineral interests, within an oil field. These parcels were subject to two oil and gas leases, the "Coffee-Marland Lease" and the "Hubbell Spafford Lease." The two leases were owned by McAdams.

---

[1] All further statutory references are to the Code of Civil Procedure unless otherwise stated.

In 1996, McAdams filed a lawsuit against Jim Smoot regarding these leases. The parties resolved this lawsuit in September 1998 by a settlement, compromise and release agreement. Included within this agreement is a provision that gives Jim Smoot "a right of first refusal to purchase" the Coffee-Marland Lease and the Hubbell Spafford Lease if McAdams proposes to sell these either or both of them. This right of first refusal requires McAdams to provide "at least 72 hours' advance written notice" to Jim Smoot "(or such other person as he or his executor, personal representative, heirs or assigns may designate from time to time by written notice to McAdams) providing all of the terms of the proposed sale and identifying the buyer, and Mr. Smoot shall have 72 hours from time of receipt thereof in which to match the terms of the offer and purchase the Coffee Section 6 Lease and/or Hubbel Spafford Lease themselves."

After Jim Smoot died, Luise Smoot placed the property burdened by the Coffee-Marland Lease and the Hubbell Spafford Lease into the Trust. Upon Luise Smoot's death, Judith Smoot became the trustee of the Trust. Judith Smoot and her son, Brett Cooper, are Trust beneficiaries.

There is a large area of acidic sludge on a portion of the leased land owned by the Trust. This sludge has been present for many years. In 2005, the Kern County Environmental Health Services Department determined that the acidic sludge posed a health risk and ordered the Trust to fence the site and post warnings. The Trust complied with this order.

In September 2012, Macpherson and McAdams signed a letter of intent for the sale of oil and gas properties and mineral interests. As part of this transaction, Macpherson was to purchase both the Coffee-Marland Lease and the Hubbell Spafford Lease from McAdams. The letter of intent provided that the transaction was subject to the parties drafting and agreeing upon a definitive purchase and sale agreement and upon Macpherson completing environmental and other due diligence.

3.

Macpherson and McAdams executed a purchase and sale agreement on November 29, 2012. This agreement provided that Macpherson was not obligated to proceed with the purchase until Macpherson had satisfactorily completed its due diligence and had so notified McAdams in writing. Macpherson notified McAdams that it would proceed with the purchase on November 30, 2012.

On December 4, 2012, McAdams delivered a letter to Judith Smoot, Brett Cooper and Martin Smoot, the Trust beneficiaries, notifying them of the proposed sale to Macpherson. McAdams inquired as to whether these Trust beneficiaries and/or the Trust would exercise the right of first refusal to purchase either or both of the leases. McAdams included copies of the purchase and sale agreement and the supporting documents.

Judith Smoot responded to McAdams by letter dated December 10, 2012 (Smoot Letter). Smoot first objected to receiving over 1,000 pages of documents to review and respond to within 72 hours. In addition to this "fairness issue," Smoot made other comments on behalf of the Trust.

First, even though "responding to [McAdams's] letter as a matter of business courtesy," Smoot stated she was not certain that the Trust "can exercise ownership of the right of first refusal or receive or accept any notice via [McAdams's] letter in the first place." Smoot explained that, as far as she knew, "the right of first refusal has not been assigned or transferred to the Trust or probated after Jim C. Smoot's passing. Therefore, the Trust would probably need to request the probate court to decide who owns the right of first refusal."

Judith Smoot further stated she was "not agreeing" that McAdams's delivery of notice to herself, the Trust, Brett Cooper or Martin Smoot "satisfies your notice obligations under the subject Settlement Agreement, because absent probate court direction, it seems your notice should have gone to the estate of Jim C. Smoot, not the

4.

Trust."  Smoot also complained that McAdams had "not done anything to ascertain who is the proper recipient of notice" as she believed he was "reasonably required to do."

Smoot then went on to object to various aspects of the purchase and sale agreement.  On behalf of the Trust as the landowner, Smoot found a "major area of concern" to be language in the purchase and sale agreement where McAdams and Macpherson "appear to deny all liability for the anomaly your documents call the 'Poso Creek Area Contamination,'" i.e., the acidic sludge.  Rather, the Trust took the position that all present and future lessees are liable for the acidic sludge and that if any third party or agency remediation efforts should commence the Trust intended "to take that position, seek appropriate contribution and indemnity, and vigorously defend against efforts to make the Trust, which we contend is a completely innocent party, the sole responsible party.  *The trust has no present intention to raise any of these issues but will vigorously defend itself if others do so.*"  (Italics added.)

Smoot also disagreed with the allocation of value between the two leases, expressed concern over a purported release of drilling mud as being a recent environmental incident, and questioned whether the notice of the proposed sale was timely.  Smoot additionally stated that the Trust was very concerned that the form of the grant deed attached to the purchase and sale agreement could potentially cloud title and would arguably slander title to the Coffee-Marland Lease land by referencing the acidic sludge contamination.  Finally, Smoot complained about the environmental assessment report obtained by Macpherson.  According to Smoot, this report inaccurately characterized the acidic sludge site and incorrectly recommended that the "'responsible landowner' should 'examine and correct the site drainage … to ensure that known hazardous materials cannot be carried offsite by stormwater or livestock'" because the Trust "denies and will forever contest that it is 'responsible' for the Waste."

5.

Smoot concluded with "[u]nless the above points are addressed and proper notice as required by the Settlement Agreement is given to the proper person(s) and reasonable time is granted to review the revised [purchase and sale agreement] which addresses the relevant [purchase and sale agreement] drafting points described in this letter, I believe the preferential right provisions have not been followed by your company. I request your cooperation in resolving the above issues and questions so that the rights of all concerned can be protected."

On December 12, 2012, two days after the Smoot letter was written, the transaction between McAdams and Macpherson closed. Also on December 12, Macpherson filed the underlying complaint. Macpherson alleged that appellants interfered with its valid contract with McAdams and slandered its title to the leases acquired from McAdams. Macpherson further alleged that, by permitting environmental contaminants to be discharged and/or maintained on the property covered by the Coffee-Marland Lease, appellants had created a continuing nuisance and were trespassing. Finally, Macpherson sought a declaration regarding the right of first refusal and liability for the acidic oil sludge.

Appellants filed a motion to strike the complaint as a SLAPP under section 425.16. Appellants argued that the complaint arose out of the Smoot Letter which was protected both as a prelitigation statement and a statement concerning an issue of public interest, i.e., environmental contamination.

The trial court denied the motion. The court concluded appellants failed to demonstrate that the Smoot Letter was protected under section 425.16 and that the complaint arose out of the sending of the Smoot Letter.

Appellants challenge the denial of their anti-SLAPP motion as to two of Macpherson's six causes of action, interference with contract and slander of title.

## DISCUSSION

### 1. *The anti-SLAPP statute.*

Section 425.16 was enacted in 1992 to provide a procedure for expeditiously resolving "nonmeritorious litigation meant to chill the valid exercise of the constitutional rights of freedom of speech and petition in connection with a public issue." (*Sipple v. Foundation for Nat. Progress* (1999) 71 Cal.App.4th 226, 235.) It is California's response to meritless lawsuits brought to harass those who have exercised these rights. (*Church of Scientology v. Wollersheim* (1996) 42 Cal.App.4th 628, 644, disapproved on another ground in *Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 68, fn. 5 (*Equilon Enterprises*).) This type of suit, referred to under the acronym SLAPP, or strategic lawsuits against public participation, is generally brought to obtain an economic advantage over the defendant, not to vindicate a legally cognizable right of the plaintiff. (*Kajima Engineering & Construction, Inc. v. City of Los Angeles* (2002) 95 Cal.App.4th 921, 927.)

When served with a SLAPP, the defendant may immediately move to strike the complaint under section 425.16. To determine whether this motion should be granted, the trial court must engage in a two-step process. (*City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 76 (*City of Cotati*).)

The court first decides whether the defendant has made a threshold showing that the challenged cause of action is one "'arising from'" protected activity. (*City of Cotati, supra,* 29 Cal.4th at p. 76.) The moving defendant must demonstrate that the act or acts of which the plaintiff complains were taken "in furtherance of the [defendant's] right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue …." (§ 425.16, subd. (b)(1); *Equilon Enterprises, supra,* 29 Cal.4th at p. 67.) If the court concludes that such a showing has been made, it

7.

must then determine whether the plaintiff has demonstrated a probability of prevailing on the claim. (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 88.)

The questions of whether the action is a SLAPP suit and whether the plaintiff has shown a probability of prevailing are reviewed independently on appeal. (*ComputerXpress, Inc. v. Jackson* (2001) 93 Cal.App.4th 993, 999.) Further, the anti-SLAPP statute is to be broadly construed. (§ 425.16, subd. (a).)

**2.      *The Smoot Letter is not entitled to protection under section 425.16.***

Section 425.16, subdivision (e), clarifies what speech constitutes an "'act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue' .…" Such speech includes: "(1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law, (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest, or (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." (§ 425.16, subd. (e).)

Appellants argue that the Smoot Letter is entitled to protection as a prelitigation communication relating to enforcement of the 1998 settlement agreement between McAdams and Jim Smoot.

Conduct that relates to litigation may qualify as an exercise of the constitutional right of petition under section 425.16. (*A.F. Brown Electrical Contractor, Inc. v. Rhino Electric Supply, Inc.* (2006) 137 Cal.App.4th 1118, 1125 (*A.F. Brown*).) In fact, courts have adopted a fairly expansive view of what constitutes litigation-related activities

8.

within the scope of that section. (*Kashian v. Harriman* (2002) 98 Cal.App.4th 892, 908.) Moreover, section 425.16, subdivision (e)(1), (2) is coextensive with the litigation privilege of Civil Code section 47, subdivision (b). (*A.F. Brown, supra,* 137 Cal.App.4th at p. 1125.) Accordingly, communications preparatory to or in anticipation of the bringing of an action or other official proceeding are entitled to protection under section 425.16 and the litigation privilege. (*Briggs v. Eden Council for Hope & Opportunity* (1999) 19 Cal.4th 1106, 1115.)

However, the litigation privilege protects only prelitigation communications having some relation to an *anticipated* lawsuit. (*A.F. Brown, supra,* 137 Cal.App.4th at p. 1128.) Such anticipated litigation must be contemplated in good faith and be under serious consideration. (*Aguilar v. Goldstein* (2012) 207 Cal.App.4th 1152, 1162.) The "good faith" and "under serious consideration" requirement focuses on whether the litigation was genuinely contemplated. (*People ex rel. Fire Ins. Exchange v. Anapol* (2012) 211 Cal.App.4th 809, 824.) The "mere potential or 'bare possibility' that judicial proceedings 'might be instituted' in the future is insufficient to invoke the litigation privilege. [Citation.] In every case, the privileged communication must have some relation to an imminent lawsuit or judicial proceeding which is *actually* contemplated seriously and in good faith to resolve a dispute, and not simply as a tactical ploy to negotiate a bargain." (*Edwards v. Centex Real Estate Corp.* (1997) 53 Cal.App.4th 15, 36 (*Edwards*).)

Considering the above parameters, the Smoot Letter does not fall within the protection of section 425.16 or the litigation privilege. Judith Smoot stated she was responding to the notice of the proposed lease sale as a "business courtesy" and expressed uncertainty regarding the ownership of the right of first refusal. In this context, Smoot explained that "the Trust would probably need to request the probate court to decide who owns the right of first refusal" because the Trust did not "wish to overstep its clear rights

9.

however much it would like to be of assistance." This language in no way demonstrates that appellants were seriously and genuinely contemplating an imminent judicial proceeding to resolve their uncertainty over the ownership of the right of first refusal. Similarly, the Smoot Letter's request for an explanation as to why "much earlier efforts were not made by you to ascertain the proper recipient of notice and to give timely notice back in September" does not suggest imminent good faith litigation. Contrary to appellants' characterization, Judith Smoot did not send a demand letter regarding the rights under the 1998 settlement agreement.

Further, the Smoot Letter's references to liability for the acidic sludge on Trust property does not demonstrate that the letter was written in anticipation of litigation regarding any environmental issues. While the Trust took the position that it was not responsible for the acidic sludge, the letter states that the "Trust has no present intention to raise any of these issues but will vigorously defend itself if others do so."

Finally, the Smoot Letter's references to the Trust's "concerns" regarding the allocation of value between the two leases, the grant deed's description of title, a recent "environmental incident," and the language used in the environmental site assessment do not suggest or propose litigation. "Without some actual verbalization of the danger that a given controversy may turn into a lawsuit, there is no unmistakably objective way to detect at what point on the continuum between the onset of a dispute and the filing of a lawsuit the threat of litigation has advanced from mere possibility or subjective anticipation to contemplated reality." (*Edwards, supra,* 53 Cal.App.4th at pp. 34-35.)

In sum, although the Smoot Letter raises questions regarding McAdams's compliance with the 1998 settlement agreement, it does not indicate that appellants are seriously and in good faith contemplating litigation to resolve the dispute. Accordingly, the Smoot Letter is not entitled to protection under section 425.16 or the litigation privilege as a prelitigation communication.

10.

Appellants also make vague arguments regarding the acidic oil sludge. Appellants assert the Smoot Letter raised a tort claim of slander of title based on the McAdams-Macpherson deed. According to appellants, this deed burdens Trust property and misleads the public record by referring to the property "generally as 'contaminated.'" Appellants contend the "Smoot Letter demanded McAdams and his purported buyer Macpherson refrain from recording and publishing disparaging extraneous and erroneous information regarding the oilfield Waste because it would contradict and misrepresent previous public information about what was already a public issue by virtue of the Kern County 'Fence and Post Order' action." Appellants conclude that the Smoot Letter's discussion of this waste issue, "which attempted to correct this misinformation, was protected free speech as well." Thus, appellants seem to take the position that the Smoot Letter's references to the acidic oil sludge are protected under section 425.16, subdivision (e)(4), as conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with an issue of public interest.

However, "an issue of public interest" must include attributes that make it one of public, rather than merely private, interest. (*Weinberg v. Feisel* (2003) 110 Cal.App.4th 1122, 1132.) The assertion of a broad and amorphous public interest that can be connected to the specific dispute is not sufficient. (*Ibid.*) The focus must be on the *specific nature of the speech* rather than the generalities that might be abstracted from it. (*D.C. v. R.R.* (2010) 182 Cal.App.4th 1190, 1216.)

Here, the specific nature of the speech is appellants' concern that the Trust's title to certain property would be slandered due to the acidic oil sludge being placed in a false light. This is a private matter. The "broad and amorphous" public interest of environmental contamination is only tangentially related. Therefore, the Smoot Letter's references to the acidic oil sludge are not protected under section 425.16.

In light of our conclusion that the Smoot Letter is not entitled to protection under 425.16, we need not consider whether the causes of action at issue arose from the Smoot Letter or whether Macpherson established a probability of prevailing on the merits of its claims.[2]

## DISPOSITION

The order is affirmed.  Costs on appeal are awarded to respondent.

_____

LEVY, Acting P.J.

WE CONCUR:

_____

KANE, J.

_____

POOCHIGIAN, J.

---

[2]     Appellants' motion for judicial notice is denied as irrelevant.

12.